**Odell CARSON, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00514–CR.**

Court of Appeals of Texas, Dallas.

Feb. 8, 1989.

S. Michael McColloch, David W. Coody, Dallas, for appellant.

Leslie McFarlane, Dallas, for appellee.

Before THOMAS, BURNETT and WHITTINGTON, JJ.

BURNETT, Justice.

The Texas Court of Criminal Appeals remanded this case to this Court to determine whether the trial court's submission of the unconstitutional parole law instruction mandated by section 4 of article 37.07 of the Texas Code of Criminal Procedure contributed to Odell Carson, Jr.'s punishment as assessed by the jury. We find beyond a reasonable doubt that the submission of this instruction did not contribute to appellant's punishment; accordingly, we affirm the trial court's judgment.

To determine whether the above-mentioned parole law instruction contributed to

appellant's punishment, we must conduct a harm analysis under the guidelines of rule 81(b)(2) of the Texas Rules of Appellate Procedure. *Rose v. State*, 752 S.W.2d 529, 554 (Tex.Crim.App.1988) (on reh'g). Rule 81(b)(2) provides: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." TEX.R.APP.P. 81(b)(2). This standard requires a review of the entire record.

A jury found appellant guilty of aggravated robbery and sentenced him to thirty-five years' confinement. Appellant entered an ice cream shop, ordered an ice cream cone, and then raised his shirt, revealing the handle of a gun. Appellant told complainant, the manager of the ice cream shop, that he did not want to hurt anyone but that he wanted money. After complainant called the assistant manager, appellant said: "I already said I don't want to hurt anybody. Give me the money." Complainant gave appellant the money in the cash register, and appellant left the shop.

During the punishment hearing, the State introduced evidence of one prior felony conviction for robbery. Also during the punishment hearing, appellant's sisters testified that he worked consistently since being placed on probation from the earlier robbery, that he had a steady job, and that he supported his wife and his wife's three children.

Neither party mentioned the parole law during jury arguments. During voir dire examination, however, one prospective juror asked when an individual becomes eligible for parole. The trial court responded:

A year ago I would have told you that's none of your business, but the Legislature changed all that, and you will—if we get to the punishment phase, you will be charged that, in this case, the defendant must serve one-third of a sentence assessed before he is eligible for parole. One third or twenty years, whichever is less. So, if you gave him a sentence of sixty years or more, he'd have to serve twenty calendar years before he's eligible.

Now, no one can predict—that is, a defendant with this charge against him. Now, no one can predict what's going to happen to this defendant if he's given a sentence like that, and eligibility does not mean that parole is going to be granted. If you give him a fifty-year sentence, he may have to do the whole fifty years. We're talking about eligibility.

And but one—the law provides that in aggravated cases the defendant must serve one third of the sentence assessed or twenty-years, whichever is less, and no one can predict the exact time anybody is going to be released. That's about as much as I can tell you.

The trial judge simply restated the parole law instruction.

The jury charge on punishment did not contain a mitigating instruction, such as the one found in *Rose*. *Rose*, 752 S.W.2d at 554. Because the jury found true the allegation that appellant had previously been found guilty of robbery, the possible range of punishment was fifteen to ninety-nine years' confinement or life.

During the arguments on punishment, the State made the following argument:

Ladies and gentlemen, the State of Texas is going to ask you, after you find that first paragraph true, that you start with the proposition that this defendant should be put in the Texas Department of Corrections for life and for you to work back and see if there is any justification for this defendant to be given a sentence of anything less than life in the Texas Department of Corrections.

Look at his prior conviction for robbery; look at the fact that he had a gun when he committed the robbery; that that handgun; that handgun that he had was a deadly weapon; look at the fact that we had a live, breathing human being behind the cash register out there at the Haagen–Dazs when this robbery was committed; look at the fact that we had other witnesses in that store when this robbery was committed when you think

about a life sentence and try to determine if he deserves anything less than a life sentence.

The facts of this case are not heinous. The sentence that the jury assessed was approximately one-third the maximum sentence and approximately twice the minimum sentence. Given the fact that appellant had a prior felony conviction and that appellant displayed a gun, a thirty-five year sentence is reasonable. Rule 81(b)(2) does not require that we be absolutely certain that the error did not contribute to the conviction or to the punishment; rather, rule 81(b)(2) requires that we determine beyond a reasonable doubt that the error made no contribution to the conviction or the punishment. TEX.R.APP.P. 81(b)(2). We hold that beyond a reasonable doubt, the submission of the parole law instruction did not contribute to appellant's punishment. Accordingly, the judgment of the trial court is affirmed.